UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KHAN, et al., <br> Plaintiffs, <br> v. <br> JUSTIN ROGERS, et al., <br> Defendants. | Case No. 17-cv-05548-RS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I. INTRODUCTION

David Khan and Nay Zar Tun Kyaw ("Plaintiffs") filed this federal civil rights action against the City of Pinole, the Pinole Police Department ("PPD"), PPD Chief Neil Gang, PPD Officer Rogers, Pinole City Attorney Eric Casher, and Contra Costa County in connection with Khan's arrest in December 2016. On April 25, 2018, the PPD, Chief Gang, City Attorney Casher, and Contra Costa County were dismissed from the action. A contentious discovery process ensued between Plaintiffs and the remaining defendants ("Pinole Defendants" or "Defendants"), during which Khan repeatedly disobeyed court orders despite being warned that refusal to comply could result in sanctions. The Pinole Defendants now move for a second time for terminating sanctions or, in the alternative, monetary sanctions. For the reasons set forth below, Plaintiff Khan's claims are dismissed with prejudice. Plaintiff Kyaw's claims are not dismissed.

## II. BACKGROUND

### A. The Discovery Process Begins

On June 21, 2018, after discovery had opened, the Pinole Defendants served Plaintiffs with

a demand to inspect Khan's cell phone pursuant to Rule 34.[1] Blechman Decl. ¶ 2 (Dkt. 126-1). The cell phone had been seized by the PPD during Khan's arrest and was still in their custody at that time. Khan objected to the request for inspection and refused to unlock the phone based on his belief that it had been seized without probable cause. On August 29, the Magistrate Judge assigned to resolve discovery disputes instructed the parties to produce a joint discovery letter addressing possible overbreadth and privacy concerns associated with a complete download of Khan's cell phone, which the Pinole Defendants had requested. Order Re Discovery Letter Brief 3-5. She further explained in that order, and another order issued on August 30, 2018, that the Fourth Amendment's prohibition on unreasonable search and seizure did not preclude Plaintiffs from being subject to civil discovery. *Id.* at 2; *see also* Order Re Supplemental Brief 1-2. The Magistrate Judge also warned Plaintiffs that failure to participate in discovery could result in sanctions, including dismissal of the action. Order Re Supplemental Brief 3.

On September 28, 2018, the Magistrate Judge issued an order authorizing a download of the data on Khan's cell phone in light of his refusal to unlock the phone and produce the requested documentation. Order Addressing Discovery Dispute 4. A forensic analyst was enlisted to download the contents of the cell phone and retain a copy of this information, but was ordered to refrain from reviewing the data or providing it to any other person absent a court order. *Id.* 5. The Magistrate Judge further ordered the Pinole Defendants to return Khan's cell phone to him and instructed Plaintiffs to respond to certain cell phone-related discovery requests within fourteen days of the return. *Id.* 5-6. The order warned that failure to comply with the discovery process or with court orders could result in sanctions including monetary fines and dismissal of the case. *Id.* at 6.

Khan, however, refused to accept return of the cell phone, claiming the download of the phone's contents violated "the basic rule of law." Blechman Decl. ¶ 4 (Dkt. 99). Instead of

---

[1] For the purposes of this order, a Federal Rule of Civil Procedure will be referred to simply as a "Rule."

cooperating with defense counsel's efforts to return the phone, Khan accused the Court of "playing games with procedures" and conspiring with "the lawyers, the cops and all government employees" to commit unspecified crimes. *Id.* ¶ 6. On November 6, 2018, the Magistrate Judge issued a second order instructing Khan to take back possession of his cell phone and to produce all relevant documents regarding the phone. The order warned yet again that failure to comply could result in sanctions. Despite this second order, Plaintiffs continued to refuse to accept the phone unless the Pinole Defendants deposited $20,700,000 in his bank account and secured the presence of "Senator Kamala Harris, Sen[ator] Jason Chaffetz, [and] persons from the FBI" to witness the cell phone's return. Blechman Decl., Ex. B (Dkt. 105).

Despite Khan's defiance, the Magistrate Judge elected not to impose sanctions. Instead, the November 13, 2018 order directed the Pinole Defendants to submit a proposal for an independent "taint team" to review the saved data and extract the relevant evidence. Order Addressing Ongoing Discovery Dispute 2-3. Defendants researched and submitted a proposal, which the Magistrate Judge adopted on November 20, 2018. In December 2018, almost six months after the initial request for inspection of the cell phone, the taint team was able to review the cell phone data and produce the requested discovery. On November 19, 2018, the discovery deadlines were extended to account for this delay.

**B. Khan's First Deposition**

Plaintiffs' depositions were initially set for January 11, 2019. On January 5, they filed a motion stating that they would not attend their depositions or comply with discovery because they believed the Pinole Defendants were continuing to violate the rule of law. The Magistrate Judge's November 20, 2018 order had warned Plaintiffs that refusal to attend their depositions could result in sanctions. Plaintiffs ultimately did attend the deposition, although they arrived an hour late. Blechman Decl. ¶ 10 (Dkt. 126-1). Plaintiff Kyaw was successfully deposed at that time. Plaintiff Khan, however, attempted to evade the vast majority of the questions asked by defense counsel and repeatedly refused to answer questions on the grounds that he found them irrelevant. Blechman Decl., Ex. A at 17-18, 22-23, 31-32, 36-37, 39, 41-44, 47-49, 54-64, 67-68, 74-75, 77-

83 (Dkt. 126-1). At one point, he refused to answer a question by simply stating: "If you answer the question, I will." *Id.*, Ex. A at 42. Among the questions he refused to answer were queries regarding whether he spray painted the property of an associate of his or sent that individual threatening messages prior to his arrest.

At one point during the deposition, Khan boasted that he has answered "zero" of defense counsel's questions. *Id.*, Ex. A at 61-62. After approximately two hours of being deposed, Khan stated: "So I'm going to stop it here. Unless they come clean, I'm going to stop it here . . . ." *Id.*, Ex. A at 84-85. The deposition ended shortly thereafter. *Id.*, Ex. A at 84-88. The total cost associated with this attempt to depose Khan was approximately $3,133, excluding attorneys' fees. *Id.* ¶ 13.

**C. Defendants' First Motion for Monetary Sanctions or Dismissal**

In January 2019, the Pinole Defendants moved to dismiss the action under either Rule 37 or Rule 41 in light of Khan's failure to abide by court orders and to carry out his discovery obligations. In the alternative, they sought monetary sanctions to compensate them for the cost of arranging Khan's first deposition. Although there was ample evidence of Khan's noncompliance with court orders and refusal to participate in discovery, the March 5, 2019 order declined to dismiss the case and instead ordered Khan to sit for a second deposition lasting up to seven hours. Order Re Sanctions 2. The Court also declined to impose any monetary sanctions on Khan, who is proceeding *in forma pauperis*. *Id.* The order cautioned, however, that further obstructionist behavior could result in significant monetary sanctions and possible dismissal of the case. Furthermore, Khan was advised both at the hearing and in the order itself that he "may not refuse to answer questions on the grounds that he believed them to be irrelevant." *Id.*

**D. Khan's Second Deposition**

During his second deposition, Khan engaged in much of the same conduct as in his first deposition. He repeatedly refused to answer questions on the grounds that he found them irrelevant. When reminded that he had been ordered to cooperate in his deposition he responded "Who cares? Who cares? If the Court [were] really doing the right thing, I don't have to be here."

Blechman Decl., Ex. B at 159 (Dkt. 144-1). He also accused the Court of acting "on bias and prejudice" in requiring him to sit for a second deposition and stated: "The Court order is not my obligation." *Id.*, Ex. B at 144, 148, 220. Khan also repeatedly asserted that he did not have to answer certain questions, and that he would answer at trial instead. *Id.*, Ex. B at 246-248, 250-251.

Khan engaged in other disruptive conduct during the course of the deposition. First, he arrived approximately forty-five minutes late to the 10:00 a.m. deposition and repeatedly stated that he had to leave at either 2:00 p.m. or 3:00 p.m., even though he had been ordered to sit for up to seven hours of deposition. *Id.*, Ex. B at 144-145, 209, 238. The deposition was also delayed because Khan attempted to record the proceeding on his cell phone. Court Security Officers ("CSO") repeatedly instructed Khan to stop recording and to delete any recording he had made inside the courtroom. *Id.*, Ex. B at 108-116. Khan refused to comply and further refused to answer any questions until the "judge or the clerk" arrived. *Id.*, Ex. B at 113. The Magistrate Judge was forced to halt a conference associated with another case to intervene. *Id.*, Ex. B 116-128. She was eventually able to convince Khan to delete the recording on his phone and reiterated that private recordings were not permitted inside the courthouse. *Id.* Near the end of the deposition, however, Khan admitted that he resumed recording after the Magistrate Judge left, though he claimed that he had "broadcasted" rather than "recorded" the proceeding. *Id.*, Ex. B at 258-259.

At one point during the deposition, defense counsel's cell phone dropped on the ground. Khan picked up the phone, put it in his own backpack, and refused to return it. *Id.*, Ex. B at 168-171. Defense counsel repeatedly asked for the phone back, but Khan simply taunted him in response. *Id.* The deposition was once again discontinued as defense counsel attempted to resolve this standoff. Unable to find a CSO to assist him, defense counsel eventually grabbed the phone out of Khan's hand. *Id.* Plaintiffs make no attempt to dispute this course of events. Instead they claim Khan engaged in this conduct to make a point about the purported wrongfulness of the seizure of his phone by the PPD. Opp. 6.

Defense counsel eventually chose to terminate the deposition after several hours. The Pinole Defendants now move for a second time to dismiss this action under Rule 37 or Rule 41. In

United States District Court
Northern District of California

the alternative, they seek monetary sanctions to compensate for the cost of both depositions. They incurred approximately $4,088 in costs to conduct this second deposition, excluding attorneys' fees. Blechman Decl. ¶ 10 (Dkt. 144-1).

## III. LEGAL STANDARD

Under Rule 41(b), a district court may dismiss an action where the plaintiff fails "to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). Such dismissals are reviewed for abuse of discretion. *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1278 (9th Cir. 1980). Rule 37 similarly grants courts the authority to impose sanctions, up to and including attorneys' fees and dismissal, if a party fails to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(A). In deciding whether to dismiss an action under either Rule 37 or Rule 41, district courts consider five factors: (1) the public's interest in expeditious resolution of cases; (2) the court's need to manage its docket; (3) prejudice to the defendant; (4) the public policy in favor of resolving cases on the merits; and (5) the availability of less severe sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). Finally, dismissal under Rule 37 is appropriate only if a plaintiff's conduct rises to the level of "willfulness, bad faith, or fault," which can be established by a showing of disobedient conduct "not shown to be outside the control of the litigant." *Henry v. Gill Industries*, 983 F.2d 943, 948 (9th Cir. 1993); *see also Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004).

## IV. DISCUSSION

### A. Expeditious Resolution and Management of Court's Docket

The Scheduling Order for this case has been modified twice now to enlarge the time for discovery, once on November 19, 2018 and again on March 8, 2019. These modifications were necessary due to Khan's refusal to carry out his discovery obligations. First, his refusal to produce relevant evidence contained in his phone resulted in several months of delay. Furthermore, his failure to participate in good faith in his first deposition resulted in a second deposition, which again required an extension of the discovery deadlines. Moreover, Khan has in no manner

indicated that he intends to adjust his obstructive conduct if permitted to proceed with his claims. Accordingly, the public interest in expeditious resolution of cases weighs in favor of dismissal of Khan's claims.

Similarly, Khan's conduct has wasted a considerable amount of judicial resources. The Magistrate Judge and this Court have repeatedly explained to Khan the necessity of performing his discovery obligations and given him multiple opportunities to comply. Indeed, the Magistrate Judge went to great lengths to educate him and even created a work-around when it appeared he was unwilling to produce the required discovery. Unfortunately, Khan has interpreted this patience and leniency as license to continue to disregard his discovery obligations and disobey court orders. Given this pattern of noncompliance, allowing Khan to proceed would result in the further waste of judicial resources. Accordingly, the Court's interest in managing its docket and conserving judicial resources also weighs in favor of dismissal. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (holding that a litigant's "routine noncompliance" undermined the court's control over its docket).

### B. Prejudice to the defendant

The Pinole Defendants have also been prejudiced in two key ways. First, they have been subjected to unnecessary delay caused by Khan's disruptive conduct. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 991-92 (9th Cir. 1999) (holding that unjustified delay caused by one party's noncompliance with court orders qualifies as prejudice to the opposing party). Indeed, this action has been prolonged substantially by Khan's refusal to cooperate during discovery and his open defiance of court orders. Second, allowing Khan's claims to proceed would prejudice the Pinole Defendants by forcing them to continue to bear the monetary costs of Khan's noncompliance. They have now paid several thousand dollars to depose Khan not once, but twice. Furthermore, the Pinole Defendants have been asked to expend resources researching alternative methods for obtaining data from Khan's cell phone because he refused to produce this evidence. Allowing Khan to proceed with his claims at this stage would mean continuing to shift the cost of his noncompliance onto the Pinole Defendants. Accordingly, prejudice to the defendants also

1    weighs in favor of dismissal of his claims.

**C. Public Policy in Favor of Resolving Cases on the Merits**

While the public policy in favor of resolving cases on the merits generally weighs against dismissal, this interest is diminished somewhat here given that Khan's *own* conduct continues to impede the case's progress. *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991). In any event, this factor alone is not dispositive.

**D. Availability of Less Drastic Sanctions**

The absence of effective alternative sanctions also weighs in favor of dismissal. While evidentiary sanctions could be issued, this form of discipline is unlikely to be effective in ensuring Khan's compliance given his status as a *pro se* plaintiff and his persistent refusal to abide by rules and legal principles that do not comport with his own personal sense of fairness. Monetary sanctions are similarly unattractive because Plaintiffs are proceeding *in forma pauperis*. While requiring a plaintiff to pay thousands of dollars to compensate the opposing party for the cost of foiled depositions might be an effective sanction under other circumstances, granting such relief here would simply be dressing up dismissal in other garb. In short, the only viable sanction is to terminate Khan's claims.

**E. Willfulness, Bad Faith, and Fault**

Finally, the record shows that Khan has deliberately disobeyed at least three discovery orders and has openly refused to carry out his discovery obligations despite being repeatedly warned that failure to comply could result in dismissal. First, Khan refused to take back possession of his cell phone and to produce the required discovery, as directed by the Magistrate Judge's September 28, 2018 order. Second, this defiance persisted in the face of the Magistrate Judge's November 6, 2018 order directing him once again to take back possession of his phone and to produce the requested information. Third, he continued to engage in obstructionist and evasive conduct during his second deposition, including raising baseless relevance objections even though he had been repeatedly warned that this was not a valid basis for refusing to answer. He also refused to answer several questions, insisting he would answer only at trial.

Given the unequivocal nature of the Magistrate Judge's orders, Khan's refusal to comply was clearly willful. The same can be said of his refusal to answer questions that he felt were irrelevant and his insistence that he could simply decline to answer certain question until trial, despite this Court's clear directive. When reminded of this Court's order, Khan stated, "[w]ho cares?" and claimed the order was made based "on bias and prejudice." This conduct cannot be interpreted as anything other than willful defiance of a court order. Ultimately, Khan treated the second deposition as a game. He seized defense counsel's cell phone in a deliberate attempt to provoke him, violated court rules by recording the deposition despite the Magistrate Judge's explanation that this was prohibited—then claimed he had not run afoul of the rules because he merely "broadcasted" the deposition, and repeatedly read the same inapplicable relevance objection in response to defense counsel's questions.

In sum, the *Malone* factors weigh strongly in favor of dismissal of Khan's claims. Moreover, dismissal is warranted under Rule 37 because Khan's noncompliance was willful and deliberate. The Pinole Defendants fail, however, to provide a persuasive argument as to why Plaintiff Kyaw's claims should also be dismissed. The mere fact that she was present during Khan's deposition does not render her responsible for his conduct. Nor does the present motion to dismiss identify any other conduct on her part which would justify dismissal.

## V. CONCLUSION

For the reasons set forth above, Khan's claims are dismissed with prejudice. Defendants' motion to dismiss Kyaw's claims is denied.

**IT IS SO ORDERED**.

Dated: July 11, 2019

RICHARD SEEBORG
United States District Judge

ORDER GRANTING IN PART MOTION TO DISMISS
CASE NO. 17-cv-05548-RS
9